EDWARD S. DREYER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 21, 1898.*

1. CRIMINAL LAW—*in determining sufficiency of an indictment, dates alleged are taken as true.* In determining the sufficiency of an indictment the court must consider the dates alleged therein as correct, even though the proof at trial need not correspond therewith.

2. SAME—*indictment against public officer for not turning over funds— what must be alleged.* An indictment for embezzlement under section 215 of the Criminal Code, which alleges that the accused, at the time of the offense, was the treasurer of a municipal corporation, must affirmatively show a failure by accused to turn over the funds upon demand made, *after his term of office had expired,* by the party entitled to receive them.

3. SAME—*when averment does not show expiration of term of office.* An averment in an indictment against a treasurer of a municipal corporation for failing to turn over the funds to his successor, which alleges a demand by a person "duly appointed and qualified as the successor" to the accused, "as treasurer," does not show that the term of office of the accused had expired, as against a prior allegation that at the time of the offense the accused was treasurer.

4. SAME—*when demand by successor in office is not sufficient.* A written demand by a successor in office on his predecessor to turn over funds, delivered at the residence of such predecessor by a messenger not authorized to receive the funds, will not ground an indictment for embezzlement under section 215 of the Criminal Code, where there is no particular place for transacting the business of the office, and the demand fails to state where the successor might be found to receive the funds.

5. PUBLIC OFFICERS—*Interest act of 1893 has not changed fiduciary character of public officers.* The act of 1893, (Laws of 1893, p. 136,) to compel custodians of public funds to account for interest thereon, has not changed the fiduciary character of the obligations of such custodians so as to make the relation between them and their respective depositors that of debtor and creditor, but merely imposes an additional duty on such custodians to make the funds in their control interest-bearing.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

MORAN, KRAUS & MAYER, for plaintiff in error:

The indictment is fatally defective in that it alleges that Dreyer was still in office when the offense was committed, and fails to show a demand by the alleged successor after said successor had been appointed. *State* v. *Shields*, 8 Blackf. 151; *State* v. *Jones*, 10 Humph. 41; *State* v. *Wise*, 66 N. C. 120; 1 Bishop on Crim. Proc. (3d ed.) sec. 404; *Commonwealth* v. *Maloney*, 112 Mass. 283; *Jefferies* v. *State*, 39 Ala. 655; 1 Chitty on Crim. Law, 231; *Prichard* v. *People*, 149 Ill. 54; *State* v. *Taylor*, 7 S. D. 533; *Rex* v. *Stevens*, 5 East, 254; *Hunter* v. *People*, 52 Ill. App. 367; *State* v. *Hayward*, 83 Mo. 299; *Evans* v. *United States*, 14 U. S. 941; *Mears* v. *Commonwealth*, 2 Grant, 385; *West* v.*People*, 137 Ill. 189; *Pettibone* v. *United States*, 148 U. S. 197; *United States* v. *Britton*, 107 id. 665; *State* v. *Longley*, 10 Ind. 481; *Brown* v. *Weaver*, 22 Mich. 242; *People* v. *Tomlinson*, 66 Cal. 344; *McComb* v. *Weaver*, 18 N. Y. Sup. Ct. 272; *Weston* v. *Ames*, 10 Metc. 244; *Wright* v. *People*, 61 Ill. 384; *Haines* v. *People*, 97 id. 161.

The evidence showed conclusively that Dreyer obeyed the act of 1893 in depositing the funds to make them earn interest, which was paid over regularly to the park board; hence, under the law he became a debtor to the board, and not possibly liable to a conviction under section 215. *Kribs* v. *People*, 82 Ill. 425; *Mulford* v. *People*, 139 id. 586; *Bussing* v. *Thompson*, 15 How. Pr. 97; *State* v. *Copeland*, 96 Tenn. 296; *State* v. *Gramm*, 52 Pac. Rep. 533; Sutherland on Stat. Const. sec. 53; *Case of the Enterprise*, 1 Paine's C. C. 32; *Collins* v. *State*, 33 Fla. 47; *Wilkesbarre* v. *Rockafellow*, 171 Pa. St. 177; *State* v. *Bartley*, 23 L. R. A. 67; *Marine Bank* v. *Fulton Bank*, 2 Wall. 256; *Alston* v. *Alabama*, 92 Ala. 124.

Under the law and rules describing his duties, Dreyer became a mere agent to deposit the funds of the West Park Commissioners in some depository where they would earn interest, and he was charged with the exercise only of ordinary care and prudence in such selection, and could not be guilty of crime, under section 215, if the funds so

deposited were lost, or he was prevented from re-paying them by the closing of the bank in which they were deposited. *Page* v. *Wells*, 37 Mich. 415; *Phillips* v. *Moir*, 69 Ill. 155; Mechem on Agency, 501-503, and cases cited; *Gaither* v. *Myrick*, 9 Md. 118; *Rush* v. *Henley*, 15 S. W. Rep. 201.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and ALBERT ·C. BARNES, of counsel,) for the People:

The certainty required in an indictment is not of the highest degree, but the middle or second degree, namely, to "a certain intent in general." Bishop's New Crim. Proc. sec. 325.

Whatever is included or is necessarily implied from an express allegation need not be otherwise averred. *Baysinger* v. *People*, 115 Ill. 419.

The indictment is sufficiently technical and correct which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury. Rev. Stat. chap. 38, div. 11, sec. 6; *Morton* v. *People*, 47 Ill. 468; *Plummer* v. *People*, 74 id. 361; *Johnson* v. *People*, 113 id. 102; *West* v. *People*, 137 id. 189; *Honselman* v. *People*, 168 id. 175.

A written demand for the delivery of property will, under such circumstances as require the possessor of it to seek the owner of it to make delivery, be sufficient. *White* v. *Demary*, 2 N. H. 546.

It is the unqualified duty of a retiring custodian of public funds to deliver over the fund in any event, without any demand, principally upon the theory that no demand is necessary of one to do a duty which he owes to the public. *Joint School District* v. *Lyford*, 27 Wis. 509; *People* v. *Board of Education*,·127 Ill. 614; *People* v. *Williams*, 145 id. 573; *Commissioners* v. *Jackson*, 61 Ill. App. 381.

The relationship of debtor and creditor arising between the public and a public official with respect to public funds does not necessarily imply that the debtor

is the owner of the funds.  *Rowley* v. *Thayer,* 104 Ind. 189; *State* v. *Clark,* 73 N. C. 255; *Hunt* v. *State,* 124 Ind. 303.

Interest is increment to public funds deposited in banks in an official capacity, and vests in the State. *State* v. *McFettridge,* 20 L. R. A. 223; *Hughes* v. *People,* 82 Ill. 78; *Chicago* v. *Gage,* 95 id. 593; *New York* v. *Bank,* 126 N. Y. 665; *Hunt* v. *State,* 124 Ind. 306; *Wilkesbarre* v. *Rockafellow,* 171 Pa. St. 177; 30 L. R. A. 393.

The Interest act of 1893 must be construed with regard to the following rules of construction:

Where a statute is susceptible of more than one construction it should receive that construction which will effect the object of the statute rather than to defeat it. *People* v. *Hinrichsen,* 161 Ill. 223.

When the literal enforcement of a statute would result in great inconvenience and great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice. *People* v. *Chicago,* 152 Ill. 552; *Bryan* v. *Buckmaster,* Breese, 408; *People* v. *Marshall,* 1 Gilm. 672; *People* v. *Wren,* 4 id. 269; *People* v. *Commissioners,* 3 id. 153; *Zarassella* v. *People,* 17 Ill. 101; *People* v. *Hoffman,* 97 id. 234; *Perry County* v. *Jefferson County,* 94 id. 214; *Stripling* v. *Prettyman,* 57 id. 371; *Hamilton* v. *People,* 102 id. 367.

The title of a statute, though no part of it, is not to be wholly disregarded in construction, particularly in construing the object of the enactment.  *People* v. *Fidelity and Casualty Co.* 153 Ill. 25; *Perry County* v. *Jefferson County,* 94 id. 214; *Cruse* v. *Aden,* 127 id. 231.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of a failure to pay over $316,000 placed in his keeping, as treasurer of the West Chicago Park

Commissioners, to Fred M. Blount, his successor in office as such treasurer, and his punishment was fixed at imprisonment in the penitentiary.

The prosecution was based on section 215 of the Criminal Code, which is as follows: "If any State, county, town, municipal or other officer or person, who now is or hereafter may be authorized by law to collect, receive, safely keep or disburse any money, revenue, bonds, mortgages, coupons, bank bills, notes, warrants or dues, or other funds or securities belonging to the State, or any county, township, incorporated city, town or village, or any State institution, or any canal, turnpike, railroad, school or college fund, or the fund of any public improvement that now is or may hereafter be authorized by law to be made, or any other fund now in being or that may hereafter be established by law for public purposes or belonging to any insurance or other company or person, required or authorized by law to be placed in the keeping of any such officer or person, shall fail or refuse to pay or deliver over the same when required by law, or demand is made by his successor in office or trust, or the officer or person to whom the same should be paid or delivered over, or his agent or attorney authorized in writing, he shall be imprisoned in the penitentiary not less than one nor more than ten years: *Provided,* such demand need not be made when, from the absence or fault of the offender, the same cannot conveniently be made: *And provided,* that no person shall be committed to the penitentiary under this section unless the money not paid over shall amount to $100, or if it appear that such failure or refusal is occasioned by unavoidable loss or accident. Every person convicted under the provisions of this section shall forever thereafter be ineligible and disqualified from holding any office of honor or profit in this State."

The indictment consists of two counts, which are identical except as to three immaterial words. The first count is as follows:

"STATE OF ILLINOIS, ⎱ ss.
    County of Cook.  ⎰

"Of the February term of the criminal court of Cook county, in said county and State, in the year of our Lord one thousand eight hundred and ninety-eight:

"The grand jurors chosen, selected and sworn in and for the county of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present, that before and at the time of the committing of the offense hereinafter mentioned, one Edward S. Dreyer was an officer, to-wit, treasurer of the West Chicago Park Commissioners, the same being a board of public park commissioners appointed by the Governor of said State of Illinois and confirmed by the Senate of said State of Illinois, and exercising the power of corporate authorities in the supervision of public parks and boulevards in and for the town of West Chicago, a municipal corporation organized and existing under and by virtue of the laws of the said State of Illinois, duly appointed and qualified as such treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid, and authorized by law to collect, receive, safely keep and disburse the funds established by law for public purposes, to-wit, the funds for the maintenance of public parks and boulevards in the town of West Chicago, a municipal corporation as aforesaid, required and authorized by law to be placed in the keeping of the said Edward S. Dreyer as such officer, to-wit, treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid; that the said Edward S. Dreyer received, as such treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid, a large amount of moneys, funds and personal property, a more particular description of which is to the said jurors unknown, of the funds for the maintenance of public parks and boulevards in the town of West Chicago, a municipal corporation as aforesaid,

amounting to and of the value of $319,000, lawful money of the United States of America; that one Fred M. Blount was duly appointed and qualified as the successor to said Edward S. Dreyer as treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid, by the West Chicago Park Commissioners, a board of public park commissioners as aforesaid, on the twenty-first day of December, in the year of our Lord one thousand eight hundred and ninety-six; that the said Edward S. Dreyer, late of the county of Cook, on the said twenty-first day of December, in the year of our Lord one thousand eight hundred and ninety-six, in the said county of Cook, in the State of Illinois, aforesaid, unlawfully and feloniously and willfully failed and refused to pay and deliver over to said Fred M. Blount, successor in office as treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid, the said large amount of moneys, funds and personal property, a more particular description of which is to the said jurors unknown, the same being the funds for the maintenance of public parks and boulevards in the town of West Chicago, a municipal corporation as aforesaid, then and there amounting to and of the value of $319,000, lawful money of the United States of America, on demand therefor then and there made by the said Fred M. Blount, successor to said Edward S. Dreyer to the said office of treasurer of said West Chicago Park Commissioners, a board of public park commissioners as aforesaid, such failure and refusal on the part of said Edward S. Dreyer to then and there pay and deliver over to said Fred M. Blount, successor in office as aforesaid, the said large amount of moneys, funds and personal property, a more particular description of which is to the said jurors unknown, as aforesaid, the funds for the maintenance of public parks and boulevards in the town of West Chicago, a municipal corporation as aforesaid, then and there amounting to and of the value of $319,000, lawful money

of the United States of America, as aforesaid, then and there not being occasioned by unavoidable loss or accident, contrary to the statute and against the peace and dignity of the same People of the State of Illinois."

A motion to quash this indictment was made and overruled, and an assignment of error is that the court erred in overruling said motion. The objections to the indictment under the heads "a," "b" and "c," in the brief of counsel for plaintiff in error, relate to the inconsistencies in its averments, and will be considered together.

It will be noticed that the indictment alleges that at the time of the commission of the alleged offense by the defendant he was treasurer of the West Chicago Park Commissioners, duly appointed and qualified as such, and authorized by law to collect, receive, safely keep and disburse the funds of the board. If this averment is to be taken as true, it necessarily follows that the defendant was not bound to deliver the funds in his charge to Fred M. Blount, and that the demand alleged was not by any person to whom he was bound by law to pay or deliver the same. The indictment nowhere alleges that the term of office of the defendant had expired or that he was removed from office, and the fact that either event had occurred appears only by inference, if at all, from the averment that Fred M. Blount was duly appointed and qualified as his successor. Inference, of course, can not be admitted to make the indictment good as against a positive averment, and if it could, the inference that defendant's term of office had expired on December 21, 1896, or that Blount's had begun, would not arise from what is stated. The averment that Blount had been appointed and qualified as defendant's successor is not necessarily inconsistent with the first allegation, since it is neither improper nor uncommon to appoint a successor, who shall qualify himself to fill the office, before his term begins. That is the law and the practice as to elective officers generally, in which case the statutes fix a time

when the newly elected and qualified official shall enter upon the duties of his office. By the constitution, county officers do not enter upon the duties of their offices until the first Monday of December after their election, and State officers hold their offices from the second Monday of January next after they are elected. As a matter of fact, such was the practice of this board, and in every instance shown by its records of an election of treasurer, the new treasurer was elected before the term of office of the old treasurer expired. There is no direct allegation that at the time of the demand or the failure to pay Fred M. Blount had become treasurer, as successor to defendant, so as to entitle him to the fund. The indictment must show that the demand and failure to pay were when the defendant was no longer treasurer and had no right to retain the fund and when Blount had become treasurer and was entitled to the possession of it, and if it could be said that the indictment shows defendant's term to have ended, yet it alleges a demand and failure to pay over on the same day that Blount was appointed and qualified, without averring that the demand took place after the appointment and qualification of Blount. It is insisted that the averments of time are mere matter of form and need not be proved as laid. But that is not true in determining the sufficiency of this indictment. Ordinarily, upon the trial of a cause the proof need not show the commission of the offense at the time alleged by the indictment. It is only in particular cases that the law so requires. At the trial, the averment of a date means any time within the Statute of Limitations, and the subsequent reference "then and there" means at any such time and at any place within the county. In determining the sufficiency of the indictment, however, the court is to take the date alleged as the true one. Under that rule, defendant was treasurer December 21, 1896, until Blount succeeded him, and a demand on that date might be before or after such change in the incumbent

of the office, and there is no averment that it was after. We cannot, by taking all the averments of the indictment together, reconcile them in such way as to overcome the objection, but think the indictment comes within the rule that where the averments are inconsistent and the time is so alleged as to disclose no crime, it must be held bad. 1 Bishop on Crim. Proc. sec. 255; 1 Chitty on Crim. Law, 231.

But it is said that the indictment was framed on the statute, and is sufficient under the provision that an indictment stating an offense in the terms and language of the statute creating the offense is good. It does not come within that provision for the reason that it does not state the offense in the language of the statute, or substantially so. It charges a failure by defendant to pay over to his successor in office, who is not charged or alleged to have been successor, where it alleges at the same time that defendant himself was treasurer.

The objection to the indictment stated under the head "d" is as follows: "The indictment charges Dreyer, as treasurer, with failing to pay over a fund which came within the operation of the Interest act of 1893, and for whose re-payment he became, under that act, a mere debtor." The statute upon which reliance is based to exempt the defendant from criminal liability for a failure to turn over the funds in his keeping, in force July 1, 1893, (Laws of 1893, p. 136,) is as follows:

"An act to compel State, county, city, township, school and park treasurers, and other custodians of public funds, to account for interest on such funds under their control.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That the State Treasurer, and every county, city, township, school and park treasurer, and every other custodian of public funds, who shall be hereafter elected or appointed and qualified, shall, at the end of each fiscal year, account for interest on the daily balances of the funds from time to time in

his custody, at a rate of not less than two per cent per
annum, and as much higher as solvent banks that are
reasonably accessible pay on the daily balances of ac-
counts that are subject to sight draft or check.   Three-
fourths of such interest shall belong to the public and be
added to the fund, and the remaining one-fourth of such
interest shall belong to such treasurer or custodian, and
may be retained by him as extra compensation for the
extra care and responsibility assumed in making the fund
bear interest: *Provided,* that nothing herein contained
shall be so construed as to in any way release such treas-
urer or custodian or his bondsmen from any liability:
*And provided further,* that if any such treasurer or custo-
dian shall keep such funds, or any part thereof, in his
personal possession, and not in a bank or on deposit for
the purpose of receiving interest on the same, and keep
the same in actual money and not in securities, and shall
not in any way use such funds, or any part thereof, him-
self, or receive any interest or thing of value or compen-
sation for the use of said funds, or permit them to be used
by any person, persons, co-partnership or corporation for
his benefit, then he shall not be required to account for
any interest on the funds so kept: *Provided,* no responsi-
ble depository accessible shall be willing to pay interest,
and in that case he shall make, sign and file an affidavit in
the following form." (Here follows the form of affidavit.)

The claim made is, that because this statute required
defendant to select some responsible depository where
the fund would bear interest, and account for such in-
terest, he ceased to be custodian or keeper of the fund
and became the owner of it, and merely liable as a debtor
to account for whatever balance might be due.   In our
opinion the fiduciary character or the obligation of the
position of treasurer was not destroyed by the fact that
defendant was charged with an additional duty in respect
to the fund, and the language of the act shows that such
was not the legislative intention.   It is matter of com-

mon knowledge that custodians of large funds belonging to the public were accustomed to deposit them in banks and receive interest upon the daily balances, for which they rendered no account. The legislature, well knowing that banks paid interest on such daily balances, sought to obtain the greater portion of it for the public, allowing to the treasurer a portion of the interest as extra compensation for the care and responsibility in making the fund bear interest. The statute was plainly not intended to transfer the title of public funds to their keepers, but only to impose an additional duty without exempting such keepers from the liabilities to which they had been before amenable. Every word in the statute implies control, custody and safe keeping, and not ownership, of the money by the custodian. In the title, where the subject of the act is required to be declared, and throughout the act, the funds are referred to as public funds, the treasurers or keepers as custodians, and the funds as under their control. It would be absurd to say that a custodian of a fund means the owner of it, or that the legislature intended to compensate such an owner for making his own money bear interest. The act contemplates, by every provision, the keeping of a fund belonging to the public and compensation for its care, and the legislature could not possibly have conceived, from any of its provisions, that the title of the fund was to vest in the custodian.

But it is said that defendant was liable for two per cent interest unless there was no responsible depository accessible that would pay any interest at all, and that if he could get only one per cent or less he would be still bound to pay two per cent, and therefore would be a debtor, merely. The act must be considered in all its parts, and when so considered we do not think it calls for such a construction. The provision in relation to the exemption of a treasurer where no responsible bank accessible was willing to pay interest, when taken with the

rest of the act, evidently does not refer to a bank that would not pay anything, but to one which would not pay the interest which the treasurer was required to turn over or account for. The legislature could not have intended to require a treasurer to pay two per cent interest when the fund would not bear that amount, and to give him one-fourth of it as extra compensation for making the fund produce the interest accounted for. That would be absurd as well as a gross injustice, and such an intent is not to be attributed to the legislature. This objection to the indictment is, in our opinion, without foundation.

The same question of ownership is discussed with reference to the assignments of error that the verdict is contrary to the law and contrary to the evidence. The rules of the board required that the deposit account, wherever kept, should be in the name of the board. The right to select the depository was in the defendant, and he selected his own bank. He had a partner, Robert Berger, and they did business under the firm name of E. S. Dreyer & Co., but so far as legal responsibility is concerned there rested upon defendant an absolute liability, as partner, for the whole amount of the deposit, and there was no particular difference in that respect between a deposit with his firm and a deposit with him individually as a banker. All the funds were deposited in this bank and the account kept in the name of the board, but the checks and warrants deposited were payable to the order of the defendant, as treasurer. Substance, and not form, is material, and while the deposit was in the name of the board it was the deposit of defendant, as treasurer, and he made monthly reports of his account as treasurer, charging himself with the fund on deposit. While the account was kept in the name of the board, no checks were made against it by the board or any of its officers. The method of doing business was by drawing a warrant or draft on the defendant, as treasurer. In accordance with a common method of

doing such business, there was a note on the ends of the warrants that they were payable at E. S. Dreyer & Co.'s bank. This is a convenient method by which banks pay in such cases, and the treasurer, on taking up the warrants, gives his check for the amount. The funds in the bank were as effectively controlled by defendant as if they had been deposited in his name, and were so treated by all the parties. The entire method of dealing and the action of all the parties refute the claim that he was a mere agent, and show that the deposit in his own bank, selected by him, was his deposit and under his control.

Under the same claim that the verdict is unsupported, the question whether a legal demand was proved is raised and argued. The demand required by the statute, where it can conveniently be made, as in this case, is a request to a treasurer who has received a fund into his keeping to perform the duty required by law to pay the same over to his successor in office, or his agent or attorney authorized in writing. In this case, a messenger not authorized to receive the fund was sent to the defendant's house, in the city of Chicago, with the following paper addressed to defendant:

"You are hereby notified that I have been duly elected and qualified as the treasurer of the West Chicago Park Commissioners, and you are hereby demanded' to turn over to me, as your successor as treasurer of the West Chicago Park Commissioners, all moneys, goods and chattels which you have received as such treasurer and which has not been by you lawfully paid out.                                FRED M. BLOUNT,
                    *Treasurer West Chicago Park Comrs.*
CHICAGO, *December 21, 1896.*"

He did not see the defendant, but handed the paper to an old lady, together with a copy, and she returned the paper to him with this written below: "Received copy of the above.—E. S. Dreyer." The objection to this demand is, that it was insufficient because not made personally by the successor nor any one duly authorized to make the demand and receive the property. The written demand

reached the defendant and was acknowledged by him, and was sufficient to furnish full notice of its purpose; but the defendant could not, at the time and place of service, perform the duty, and his successor never presented himself, in pursuance of the demand, to receive the fund. The question whether a demand so made, and a failure to comply with it, rendered the defendant criminally liable, depends, in our judgment, upon the question whether it was his duty to seek his successor and deliver the fund to him, or whether the obligation was to keep it ready to be delivered to the successor when he, or some one authorized by him in writing, should present himself to receive it. Where a duty is incumbent on one merely to keep property safely, ready to deliver it, he cannot be in fault until called upon by one authorized to receive it. A demand, to be good, must be made in such a way that the party can perform the duty by delivering the fund and relieve himself from further liability, and if it is his duty to find his successor and deliver the fund to him, then a demand to go and perform that duty is sufficient. If there is an office where the duties of successive officers are to be performed, then, manifestly, it is the duty of one who has been treasurer to continue to perform his duty at that place until it is completed. One who is bound by law to turn over money to a county treasurer, where, under the statute, the county provides him with an office where the business of his office is to be transacted, is bound to go to that place. In such a case, a demand to perform that duty would amount to a request to go to that place and do the duty; and so in the case of a State treasurer having an office where the books, vouchers, accounts or funds of successive treasurers are kept and the duties of the office performed; but if, as is the fact concerning many officers, there is no office or fixed place for the performance of duty, but the office attends the person, the officer fulfills his entire duty by discharging his obligations wherever he may be. In such a case,

a treasurer whose term of office has expired has as much right to consider his place of business his house or his bank where he may be found as the place for the performance of his duty, as the successor has to say that where he may be found is the proper place. The evidence in this case does not show that there was any office provided for treasurers of the board where the business of the office was to be transacted and where the outgoing treasurer was bound to present himself and pay over the fund. The person who called at defendant's house was not authorized to receive the fund, nor was the successor, Blount, there to receive it, and the demand merely meant that defendant should seek Blount and deliver the fund to him, without even stating where he resided or did business, or where he would be at any particular time or place to receive the money. Under the evidence we can not regard the demand made as sufficient.

For the reasons given the judgment is reversed and the cause remanded.  *Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.