The People of the State of Illinois ex rel. Robert M. Sweitzer, Appellant, v. Joseph L. Gill, Appellee.

Gen. No. 39,318.

322

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937.

OTTO KERNER, Attorney General, I. HARVEY LEVINSON and LOUIS ROSENFELD, both of Chicago, for appellant.

THOMAS J. COURTNEY, State's Attorney, for appellee; HAYDEN N. BELL, WILLIAM J. TUOHY, JACOB SHAMBERG and WILLIAM P. KEARNEY, Assistant State's Attorneys, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This cause on appeal is in this court by order of the Supreme Court of Illinois transferring the case for want of jurisdiction, the original appeal having been taken direct to the Supreme Court. The order states:

"The only question this record presents is, Did the legislature empower the county board of Cook County to remove a county treasurer from that office for defaults alleged to have occurred in connection with his

prior office of county clerk and independent of his office as county treasurer? The appellee contends that section 15 of the County Treasurers act (State Bar Stats. 135, chap. 36, par. 15; 36 S. H. A. 15); expressly confers the power upon the board, and the appellant denies that it has such an effect. No construction of the constitution is involved but merely a construction of the section named. We have, therefore, no jurisdiction to entertain this direct appeal.''

The proceedings as the basis for the litigation were upon the petition of the attorney general of the State of Illinois, who at the instance of Robert M. Sweitzer, presented his petition to the circuit court of Cook county, praying for leave to file an information in the nature of a quo warranto to require the defendant, Joseph L. Gill, to show by what warrant he claimed to execute the office of county treasurer and *ex officio* county collector for Cook county, Illinois. Upon examination the court found that there was probable grounds for the proceedings, ordered that an information in the nature of a quo warranto be filed and that summons issue. The attorney general of the State of Illinois, in compliance with the direction, filed an information, which is, in substance, that at the relation of Robert M. Sweitzer, the attorney general gives the court to understand and to be informed, that on the 3rd day of December, A. D. 1934, Robert M. Sweitzer, the relator as aforesaid, was duly inducted into the office of county treasurer for the county of Cook, Illinois, for a term of four years next ensuing and until his successor shall have been duly elected and qualified for office; that the said Robert M. Sweitzer was theretofore duly elected, took the oath required of him by law, and executed bond with security as required by law, and thereupon entered upon the discharge of his duties and proceeded to faithfully execute the office of county treasurer for the county of Cook, Illinois; and on the

6th day of June, A. D. 1934, and forever thenceforth, the defendant, Joseph L. Gill, well knowing the premises aforesaid, did and does unlawfully hold, usurp, intrude into and execute the office of county treasurer for the county of Cook, Illinois, and to the exclusion of said Robert M. Sweitzer, the said Joseph L. Gill does unlawfully hold, usurp, intrude into and execute the office of county treasurer for the county of Cook, Illinois, without warrant, title or right whatsoever, and during all of said time has unlawfully intruded into, usurped, held and executed said office, against the People of the State of Illinois, and against the peace and dignity of the same, to their detriment, damage and prejudice.

After service of summons, the defendant, on June 24, 1935, filed his pleas, and on June 28, 1935, a demurrer was filed by the relator to these pleas. Subsequent thereto, an amended and additional plea was filed.

The first plea filed by the defendant alleged that the board of commissioners of Cook county, Illinois, after investigating and considering the action of the relator as county treasurer and *ex officio* county collector, did, on the 6th day of June, 1935, adopt a resolution and order removing the relator from the said office for the reason that he was guilty of misconduct in said office, which said misconduct was alleged to be as follows:

"The Relator 'was in default as collector and custodian of money belonging to the county of Cook and appertaining to the office of the County Clerk of Cook County, by his own admissions made to the Board in the sum of $335,000.00, and by an audit of R. L. Pearce & Company in the sum of $414,129.41, which he failed . . . to turn over, and by reason of which failure . . .' he 'was rendered ineligible to hold the office of County Treasurer and *ex officio* County Collector of Cook County, under Section 11 of Article 9 of the Constitu-

tion of Illinois, and being so ineligible, and his resignation . . . having been demanded by the said Board,' the Relator 'continued to hold the said office . . . in defiance of the Constitution of Illinois and the authority of the said Board'; that the Relator 'Stated to the Board . . . that the moneys and funds due to the County of Cook and appertaining to the office of the County Clerk were in his possession or under his control, to be turned over to his successor in the office of County Clerk when the said audit of R. L. Pearce & Company had been examined by him or his auditor; whereby, it became material for the Board to determine the identity and source of said funds so promised to be turned over to prevent' the Relator 'from using the funds in his hands as County Treasurer and ex officio County Collector of Cook County, to make the turnover to his successor in the office of County Clerk; and thereupon, the Board asked or caused to be asked' of the said Relator 'if he had the money to turn over to his successor, and when' he responded 'in the affirmative, the Board asked him the following questions: . . . (1) Where is such money? and (2) Where did you get the money? both of which questions' the Relator 'refused to answer;' that the Relator has 'failed and refused to pay over to himself as County Treasurer of Cook County, moneys due said County from himself individually or as County Clerk;'. Thereafter, on the 6th day of June, 1935, the Board of Commissioners appointed the defendant County Treasurer and ex officio County Collector, to fill the vacancy caused by the removal of the Relator following the adoption of the resolution aforesaid; that the defendant has given bond in the penalty fixed and with security approved by the Board of Commissioners of Cook County, Illinois, has filed the requisite oath of office, and on the 7th day of June, 1935, entered upon the duties of County Treasurer and ex

*officio* County Collector; and thereafter, on the 21st day of June, 1935, the defendant was commissioned by the Governor of the State of Illinois, and proceeded to execute the office by virtue of this warrant, and still continues to do so; without this, the defendant has usurped and unlawfully intruded into the office of County Treasurer and *ex officio* County Collector of Cook County, Illinois.''

The second plea was identical with the first, except that it added: ''The reasons of the Board for the removal of the relator were explained and strengthened by many circumstances and details appearing in the proceedings of the Board leading to the removal, amongst which . . . were the following: That the said Relator, while holding the office of county clerk of the County of Cook, during the month of March 1922, converted to his own use and embezzled the sum of $200,000 of public funds belonging to the County of Cook as fees earned and collected by the said county clerk for the extension of taxes for the different taxing bodies of the county, and that on to-wit: June 3, 1926, the said Relator, while holding the office of county clerk as aforesaid, unlawfully transferred from the public funds and moneys belonging and appertaining to the office of county clerk' namely the redemption fund, 'to the fee fund in the office of the county clerk, to take the place of the said $200,000, embezzled from that fund as hereinbefore stated.' ''

The third plea merely denied the eligibility of the relator to hold the office, but made no reference to the defendant's rights to exercise the office.

The demurrers of the relator were overruled as to the first and second pleas, and sustained as to the third plea.

Thereafter, the People filed four replications: The first was a general traverse, and concluded to the country; the second denied seriatim the allegations contained in the first plea, and concluded to the coun-

try; the third denied seriatim the allegations of the second plea, and concluded to the country; the fourth replication denied that the board of commissioners investigated and considered the actions and doings of the relator as county treasurer, or that they adopted a resolution on the 6th day of June, 1935, as set forth in the pleas, or that the records and proceedings of the said board contained evidence of the findings as purported to be set forth in the resolution as pleaded, and then continued:

"That at a general election held on the 8th day of November, A. D. 1910, the relator was duly elected to the office of county clerk of Cook County, Illinois, and having duly qualified therefor, was thereafter inducted into office on the 5th day of December A. D. 1910, for a term of four years next ensuing, as provided by law, and thereafter, the said relator was duly elected to succeed himself in such office for the next five succeeding terms, and having duly qualified for each succeeding respective term, he continued to discharge the duties of said office as required of him by law until the 3rd day of December, A. D. 1934, when his last term of office terminated, and he thereupon relinquished the said office of county clerk ·to his duly elected. and qualified successor, Michael J. Flynn; and the said relator was theretofore duly (at a general election held on the 6th day of November, A. D. 1934) elected to the office of county treasurer and *ex officio* county collector for Cook County, Illinois, and having been duly qualified and commissioned as such, was, on the 3rd day of December, A. D. 1934, duly inducted into office as county treasurer and *ex officio* county collector, of Cook County, Illinois; as aforesaid, for a term of four years next ensuing and until his successor shall have been duly elected and qualified;

"And thereafter, during the month, to-wit, of May, A. D. 1935, a controversy arose between the relator as late county clerk as aforesaid, and Michael J. Flynn,

his successor, the said Michael J. Flynn claiming that he (the said Michael J. Flynn) had caused an audit to be made by one R. L. Pearce & Co. of the books and records of the office of the county clerk of Cook County during the incumbency of the relator as such county clerk, and that it appeared therefrom that the said relator as late county clerk, was still indebted to his successor in the sum of $414,129.41, which said amount the said relator disputed;

"Whereupon, on, to-wit, the 27th day of May, A. D. 1935, the said Michael J. Flynn, as county clerk for the County of Cook, Illinois, caused a report of such controversy to be made to the Board of Commissioners of Cook County, Illinois; and thereupon, on the 27th day of May, A. D. 1935, the said Board of Commissioners of Cook County, Illinois, convened as a finance committee to consider such controversy between the relator as late county clerk and his said successor in office; and thereupon, the said Michael J. Flynn appeared and presented to the said committee a copy of the report from the said R. L. Pearce & Company, together with a copy of a letter dated May 27, A. D. 1935, and alleged to have been forwarded to the relator."

A trial was had without a jury, a jury having been waived, and evidence was submitted that the relator was duly elected, qualified and acting as county treasurer. An audit was made of the books and accounts of the office of county clerk. For this purpose, Michael J. Flynn, who was elected and qualified as county clerk, retained R. L. Pearce & Company. The auditor submitted a report to Mr. Flynn on May 9, 1935, and Mr. Flynn turned this report over to his attorney. Finally, on May 23, 1935, R. L. Pearce & Company reported that the relator collected the sum of $414,129.41 received by him as county clerk of Cook county, which had accrued during his incumbency in that office. After the receipt of the report Mr. Flynn reported the con-

troversy to the county board and sent a letter to the relator. The substance of this letter, which was dated May 27, 1935, called to the relator's attention the audit of R. L. Pearce & Company of the office of the county clerk for the period from December 3, 1910 to December 1, 1934, a copy of which was delivered to the relator on May 23, 1935, and that the audit shows that the sum of $414,129.41 of funds and moneys appertaining to the office of county clerk was received by the relator during his incumbency and had not been surrendered and delivered to Michael J. Flynn his successor. There was also a demand made that the relator surrender and deliver to Michael J. Flynn as successor in office said funds and moneys immediately, together with all books, papers, moneys or other things belonging to said county or appertaining to said office.

The board of commissioners of Cook county requested Mr. Howard, the county auditor, to make an analysis of the Pearce report. On May 27, 1935, the finance committee, constituting the entire membership of the board of county commissioners of Cook county, Illinois, met. To this hearing were summoned Mr. Flynn and Mr. Sweitzer, as well as the State's attorney. Mr. Howard submitted to the board his analysis of the Pearce report, concluding that it appeared therefrom that the relator on May 9, 1935, was indebted to the redemption fund in the sum of $341,885.84, and that the total interest earned and not received by Cook county aggregated $72,243.57, covering the following items: Interest earned on tax redemption $39,626.76, escrow funds $685.22, and fee accounts, $31,931.59.

The matter again came up before the board of county commissioners, and, on June 5, 1935, at a meeting of the county commissioners, Mr. Sweitzer, Mr. Courtney, the State's attorney, and two of his assistants were present, and during the course of the proceedings Mr. Sweitzer announced that he was before the board Mon-

day morning at the request of the finance committee, "and I am here this morning at the request of the board members as per the resolution just read." He stated that at his appearance before the county board he had no opportunity for conference with any attorney; that he had no attorney and was hopeful that it would not be necessary for him to employ one. He further stated at this meeting: "I have never . . . denied there was an obligation to the County Clerk's office. I have never refused to make good on whatever the amount due might be. However, I do not agree that the amount shown by the audit is a correct amount, as I have stated to this Board previously. . . ." And during the course of this proceeding this colloquy took place between Commissioner Miller of the Board and the relator, Mr. Sweitzer:

"Commissioner Miller: Now, if that was public money, which it was, where is that money, if you have to have a couple of days to do it? It ought to be in your possession at all times, as a public official, hadn't it?

"Mr. Sweitzer: As a public official, what do you mean by that? Commissioner Miller: Now, you as County Clerk, knew that this money was owing? Mr. Sweitzer: Yes. Commissioner Miller: And you were asked where it is and you said you would have to have a few days time. Now, that is public money. Where is that public money now that you claim you owe? Mr. Sweitzer: In my possession. Commissioner Miller: Well, then, if you have the money—have you got it in the bank somewhere? Mr. Sweitzer: Don't you think that is more or less a personal matter, Mr. Commissioner? Commissioner Miller: Well, no. That might be personal if the money was yours personally, but that is the public's money."

Finally, on June 6, 1935, at a meeting of the board of county commissioners of Cook county, Illinois, it

appears from the record that the relator was present, and questioned by commissioner Kavanagh as follows:

"Commissioner Kavanagh: We are down here to learn if you will settle. We are merely a committee and we would have to report back to the Board. The letter is plain in itself and the resignation or ouster referred to is in the event no settlement is made. Mr. Sweitzer: I want to know what demand the committee will make when I pay this over. I am going to pay it over. I will pay it by noon or a little later in the afternoon. Can't you hold your meeting over for a few hours? Commissioner Kavanagh: We are demanding payment of $414,129.41. Mr. Sweitzer: I will pay today the sum of $325,000.00. Commissioner Kavanagh: $335,129.41? Mr. Sweitzer: Yes. Whatever the odd dollars and cents are. I will place the balance in escrow. I will handle this with Mr. Flynn in any way he thinks best in order to satisfy him and your Board. Commissioner Miller: Fix a date for this escrow payment, so that we will have something definite. Mr. Sweitzer: I will make escrow of the balance and have it all ready to pay next Monday. I am agreeable that the escrow agreement shall provide that as the auditors are working from day to day and as various sums are verified that these sums be withdrawn from escrow and paid over to Mr. Flynn. I am 100% in good faith. As the auditors go along, these funds can be released, whenever the auditors find verification."

Subsequently, upon default of the relator to account for the public funds in his possession, the board of county commissioners of Cook county, Illinois, adopted the following resolution:

"Resolved, that Robert M. Sweitzer, as County Treasurer and *ex-officio* County Collector of Cook

County, has been guilty of misconduct in said office in this:

"That, the said Robert M. Sweitzer is in default as collector and custodian of money belonging to the County of Cook and appertaining to the office of the County Clerk of Cook County, by his own admission made to this Board, in the sum of $335,000.00, and by an audit of R. L. Pearce & Company, in the sum of $414,129.41, which he has failed and refused to turn over, by reason of which failure and refusal the said Robert M. Sweitzer has been rendered ineligible to hold the said office of County Treasurer and *ex-officio* County Collector of Cook County, under Section 11 of Article IX of the Constitution of Illinois, and being so ineligible, and his resignation from said office having been demanded by this Board, the said Robert M. Sweitzer has, and does, hold the said office of County Treasurer and *ex-officio* County Collector of Cook County, and continues to perform the duties thereof, in defiance of the Constitution of Illinois and the authority of this Board:

"That, the said Robert M. Sweitzer stated to this Board, in a meeting of the Board, that the said moneys and funds due the County of Cook and appertaining to the office of County Clerk were in his possession, or under his control, to be turned over to his successor in the office of County Clerk, when the said audit of R. L. Pearce & Company had been examined by him or his auditor, whereby it became material for this Board to determine the identity and source of said funds, so promised to be turned over, to prevent the said Robert M. Sweitzer from using funds in his hands as County Treasurer and *ex-officio* County Collector of Cook County, to make the turn-over to his successor in the office of County Clerk, and thereupon the Board asked, or caused to be asked, the said Robert M. Sweitzer, in substance, if he had the money to turn over to his successor, and when the said Robert M. Sweitzer had

answered this question in the affirmative, the Board asked him the further and following questions, in substance, in relation to said money, to-wit: (1) Where is such money? and (2) Where did you get the money? both of which questions the said Robert M. Sweitzer refused to answer.

"That, the said Robert M. Sweitzer has failed and refused to pay over to himself, as County Treasurer of Cook County, moneys due said County from himself individually or as County Clerk of Cook County;

"All of which foregoing facts this Board hereby finds to be true;

"Therefore, It is Resolved And Ordered, that said Robert M. Sweitzer, as County Treasurer and ex-officio County Collector of Cook County, ought to be, and he is hereby removed from his said office."

After the adoption of this resolution by the county board, a resolution was adopted whereby the defendant was appointed county treasurer and *ex-officio* county collector of Cook county to fill such vacancy, which is as follows:

"Whereas, a vacancy exists in the office of the County Treasurer and Ex-Officio County Collector of Cook County, Joseph L. Gill, 3240 Lake Shore Drive, Chicago, Illinois is hereby appointed County Treasurer and Ex-Officio County Collector of Cook County to fill such vacancy, and to hold said office until his successor is elected and qualified according to law.

"The bond of the said Joseph L. Gill, the said Treasurer and Ex-Officio County Collector, is fixed in the sum of Three Million Dollars."

His bond was filed and approved and he took the oath of office and assumed the duties of county treasurer of Cook county and *ex officio* county collector of Cook county, Illinois.

At the conclusion of the evidence, the relator moved the court to find the issues for the People. This motion was denied and the court entered a judgment finding

the issues for the defendant, dismissing the information and taxing the costs against the relator. Motions were made by the relator to vacate the judgment, for a new trial and in arrest of judgment, all of which were overruled.

Subsequently, on motion of the attorney general of Illinois, at the relation of Robert M. Sweitzer, this court entered an order making Horace G. Lindheimer a codefendant and coappellee in this cause, and that summons issue returnable in 10 days, on the ground that on the 3rd day of November, A. D. 1936, a special election was held by which Horace G. Lindheimer was elected to fill the vacancy caused by the removal of the relator as aforesaid, and thereupon Horace G. Lindheimer by being duly elected assumed the duties of county treasurer and *ex officio* county collector for Cook county, Illinois, by taking the oath of office and furnishing a bond which was approved as provided by law, and is now in that office.

Thereafter, defendant Horace G. Lindheimer moved the court to quash the summons against him, which motion was denied, and thereupon this defendant filed a suggestion in the proceedings in which he contends that in support of his motion to quash the summons against him, and the return thereon, and to vacate this order making him a party defendant, he relies on the argument and authorities cited in his suggestions. It also appears from his brief filed in this cause that he has adopted the brief and argument of the appellee, Joseph L. Gill, and relies on whatever was said in the brief to the same extent as though it were fully set forth, and submits that this proceeding be dismissed, or, in the alternative, that the order of the circuit court of Cook county be affirmed. In other words, his appearance in this case is a general one and he submits himself to the jurisdiction of this court and adopts the brief of the defendant-appellee.

Counsel for the relator make this statement in their brief, which we take the liberty of quoting:

"At the threshold of the case we concede that authority may be delegated by the legislature to the County Board empowering the removal of constitutional officers elected for a fixed tenure. The jurisdiction, however, is a delegated power rather than an inherent authority. Consequently, an amotion must be for specified cause; otherwise jurisdiction to remove is wanting and the act of amotion is a nullity."

Our attention is directed to this statement by the relator:

"The instant cause devolves around an alleged delinquency by the Relator in the office of County Clerk during his incumbency therein from 1910 to 1934. Having relinquished that office to his successor, he was duly inducted into the office of County Treasurer and served as such for six months, when he was ousted. The causes assigned for such removal are twofold in character: the first is grounded upon the constitutional ineligibility of a defaulting office holder to occupy a position of honor and trust; the second seeks to find predicate in the supervisory powers lodged in the County Board by legislative grant over County Treasurers." It is further contended that "If the entire proceedings show a want of jurisdiction, then the same, of course, cannot be cured by a document artfully drafted."

In the consideration of the appeal to this court, we are controlled by the order of the Supreme Court transferring the cause. The Supreme Court in its order has stated that the question to be considered is: Did the Legislature empower the county board of Cook county to remove a county treasurer from that office for defaults alleged to have occurred in connection with his prior office of county clerk and independent of his office as county treasurer?

The authority upon which the board of county commissioners of Cook county acted is provided for by ch. 36, par. 15, sec. 15, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 35.17, in these words:

"If any county treasurer shall neglect or refuse to render an account, or make settlement at any time when required by law, or by the county board, or refuse to answer any question propounded to him by the county board, or is a defaulter, and in arrears with the county, or is guilty of any other misconduct in his office, the county board may remove him from office, . . ."

This provision empowers the board of commissioners of Cook county to act in a cause or causes governed by this provision of the statute, and in determining a question much depends upon the construction placed upon the language of the act as applied to the particular facts.

In the instant case it is admitted that the relator has failed to account for or to pay over the sum which he admits he has not turned over to his successor, Michael J. Flynn, the now county clerk of Cook county. This sum which he possesses was money received by him—as appears from the audit of R. L. Pearce & Company—during the time he was the county clerk of Cook county. In other words, by his admission and failure since to pay or account for, although a demand was made and not complied with, he has converted public moneys to his own use. It is rather startling when we examine the record to find that by his admission he received this money, but now insists that being the county treasurer of Cook county, such default and failure to turn over the sum to his successor as county clerk, does not make him subject to the provision empowering the board of county commissioners to remove him from office. While admitting that he is a defaulter and in arrears with the county, he insists

that the county board is limited in its powers to remove him for acts committed by him while in the office he now occupies.

The outstanding fact is that after the relator had assumed the office of county treasurer and *ex officio* county collector for Cook county, he for the first time admitted that he was a defaulter of public funds. When a demand was made on him after he acknowledged his default he offered no excuse for the retention by him of $335,000, while performing his duties as county treasurer.

As to the right of removal provided for by section 15, cited above, it is suggested by the relator that failure to account for public moneys by the relator, as required by the Constitution of the State of Illinois, does not mean that he is required to refund because of a mere pecuniary liability, but rather it must be a debt with dishonor. The provision of the Constitution having a bearing in this matter is sec. 4 of Article 4 of the Constitution of the State of Illinois of 1870, which is:

"No person who has been, or hereafter shall be, convicted of bribery, perjury or other infamous crime, nor any person who has been or may be a collector or holder of public moneys, who shall not have accounted for and paid over, according to law, all such moneys due from him, shall be eligible to the general assembly or to any office of profit or trust in this state."

Then again the further provision contained in sec. 11, Article 9, as follows:

"No person who is in default as collector or custodian of money or property belonging to a municipal corporation, shall be eligible to any office in or under such corporation."

To carry out the thought expressed in sec. 4 of Article 4 and sec. 11 of Article 9, section 15 of the County

Treasurers Act was passed by the Legislature of the State of Illinois, conferring power upon the board of county commissioners to remove the county treasurer for any of the causes therein shown. This section does not require the necessity of establishing any fact other than required by this act. It is admitted that the power to remove is provided for by section 15 of the County Treasurers Act, and was conferred upon the board by the State Legislature, and it is not necessary that there be established a liability for the amount converted by the relator other than that provided for by the section in question. This grant of power to remove is not judicial, but is administrative in character. *People v. Welty,* 75 Ill. App. 514. While the county commissioners can remove an official from office for one of the causes specified in the act in question, still where no mode of inquiry is provided for by the act, the county board may determine whether the cause of removal exists, from the best lights the board can get, and no mode of inquiry being prescribed, it rests with the board to adopt that method of inquiry and ascertainment as to the charge involved which its judgment may suggest as the proper one, acting under its official responsibility. It is not for the courts to dictate to the Board in what manner it shall proceed in the performance of its duty in this regard, its action not being subject to revision. *Wilcox v. People,* 90 Ill. 186.

And in *Donahue v. County of Will,* 100 Ill. 94, the court said:

"As to the question whether an officer can be removed from office for misfeasance or malfeasance without a judicial sentence, there could seem to be little doubt. It has been held they may, by many respectable courts. In the case of *The State v. McGarry,* 21 Wis. 496, it was held the board of supervisors, under the statute conferring the power, and for the

causes specified, might remove the incumbent of the office of inspector of the house of correction. In the case of *The State v. Prince,* 45 Wis. 610, it was held the board of supervisors might, on statutory grounds, remove the clerk of the board. In the case of *Mc-Gregor v. The Board of Supervisors,* 37 Mich. 388, it was held that the board of supervisors had power, under the statute, to remove the county treasurer. In *Kernan v. Perry,* 24 Tex. 253, it was held that under a law conferring the power on the executive to appoint a superintendent of a lunatic asylum, without fixing his term of office, the Governor had the power to remove the incumbent, and his action in doing so could not be reviewed. In the case of *Taft v. Adams,* 3 Gray, 126, it was held the legislature had power to shorten the term of any officer, when the term is not fixed by the constitution. The case of *The State v. Daugherty,* 25 La. Ann. 119, held that power conferred by statute on the executive to remove an officer for cause, implies the power to judge of the existence of the cause. Having been invested with both the power to appoint and to remove for cause, his action was not subject to review. The same rule is announced in Alabama and Georgia, that officers, when the constitution has not required impeachment, may under statutory provisions be removed without a proceeding by *quo warranto,* or judicial trial and judgment. See *Ex parte Wiley,* 54 Ala. 226; *Thompson v. Holt,* 52 id. 491; *State v. Frazier,* 48 Ga. 137.''

It may be suggested, in passing, that Mr. Sweitzer did not claim or offer the defense that the retention of the funds which he collected as an official was legal, nor did he claim that he had any interest in the funds; but his only defense is that being in the office as county treasurer, having assumed the duties of that office, and having admitted possession of the funds when a demand was made while in that office, there was

want of authority in the board of county commissioners to act.

That the relator is a defaulter is not disputed, and of course if he is a defaulter there can be no doubt that he is in arrears in paying over the funds in his possession.

As we view it, the only question necessary to consider is whether the funds received by the relator when he was in office as county clerk come within the provisions of section 15. We must bear in mind the fact, and it affirmatively appears that the relator failed to turn over the funds to his successor, who was entitled to receive them, upon demand made after his term of office as county clerk had expired. *Dreyer v. People,* 176 Ill. 590.

There is a very good reason why this should be so, for until his term of office had expired it was not necessary for the relator to turn over the funds in his possession, and when it did expire, then to his successor. His term of office as county clerk having expired, a demand was made upon him during his term of office as county treasurer of Cook county to account for or pay the funds which he admitted he possessed. He defaulted in failing to turn over these funds to his successor or to account for them as directed by law.

Section 15 which we have considered in this appeal does not direct the course of procedure to be followed by the board of commissioners of Cook county. The board entered an order of removal, which we believe is sustained by the facts as they appear in the record, and, under the circumstances, it is our opinion that there is but one thing for this court to do, and that is affirm the order—the subject of the controversy in this case. The order finding for the defendant is affirmed.

*Judgment order affirmed.*

HALL, J., concurs.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN specially concurring:

I concur in the conclusion reached in the foregoing opinion, but not with all the views therein expressed. I do not believe any particular sections of the constitution need be considered in deciding the question before us.

The relator admitted in his briefs filed in this court and in his oral argument by counsel that he was a defaulter to the extent of $335,000, said sum being moneys which came into his hands by virtue of his former office. This defalcation did not become known until after his election as county treasurer.

It is to be noted that chapter 36, par. 15, sec. 15, Illinois State Bar Stats. 1935, Jones Ill. Stats. Ann. 35.17, is a portion of an act entitled, "An Act to revise the law in relation to county treasurer," yet the language employed in this paragraph of the act is very broad and inclusive. I have in mind the rule that a grant of power to a municipal body should be strictly construed, but the manifest purpose of this section is to give to the board of county commissioners a supervisory power over the revenues of the county to insure the safety of such funds at all times.

I am of the opinion that the intent and purpose of the legislature as set forth in chapter 36, par. 15, sec. 15, Ill. State Bar Stats. 1935, was also to give to the board of county commissioners power and authority to investigate the acts and conduct of the county treasurer in safeguarding the public funds entrusted to his care. The best guide as to the future is the experiences of the past. The board had good reason to be concerned about the safety of the funds in the custody of the county treasurer and into whose care said funds should continue to be entrusted. In that regard they had the right to consider the acts of the county treasurer both past and present in relation to

his handling of public funds, as well as to consider the possible future danger to public moneys which would come into his hands. In other words, I do not think the power vested in the county board by the legislature was intended to be used merely as a corrective measure, but I believe it was intended that it also be used as a preventive measure to avert future loss of public moneys when danger to same was apparent.

In the case of *People v. Gill,* 364 Ill. 344, which is the instant case, the Supreme Court is referring this case to the Appellate Court asked this question: "Did the legislature empower the county board of Cook county to remove a county treasurer from that office for defaults alleged to have occurred in connection with his prior office of county clerk and independent of his office as county treasurer?" My answer to that query is—Yes.

Therefore, if the county board believed that, in order to safely guard present and future public revenues in the office of the county treasurer and that this could only be accomplished by the removal of the county treasurer—which the record justified—I feel that the act as passed by the legislature is broad enough to authorize the action taken by the board of county commissioners.