No.  15,258.

MARSH *v.* THE PEOPLE.
(146 P. [2d] 218)

Decided January 24, 1944.   Rehearing denied February 28, 1944.

Mr. RALPH J. CUMMINGS, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, reference to whom hereinafter will be as Marsh, was charged in an information filed April 22, 1942, with the crime of embezzlement of $4,462.81 of the moneys of the County of Jefferson and the State of Colorado, and on June 22, 1942, an information was filed against him charging him, in part, as follows: "That said * * * Marsh * * * did unlawfully and feloniously fail and refuse to pay over the sum of * * * ($4,462.18) * * * which said * * * Marsh as such County Clerk and Recorder had received as the moneys and revenue of said Jefferson County for safekeeping and for disbursement and had not disbursed, demand for such payment over to him having been duly made on the 20th day of April, A.D. 1942 by W. T. Olson, who succeeded the said * * * Marsh * * * contrary to the form of the statute in such case made and provided * * *." The two charges were consolidated and the case was tried by a jury. Marsh was acquitted on the first charge, but he was found guilty on the second, the following notation appearing in the verdict: "The jury renders this verdict in accordance with instruction number eleven (11) excepting that we believe the word feloniously in Information 1661 is contrary to the instructions of the court." He was sentenced to the penitentiary for a term of "not less than two (2) years,

and not more than seven (7) years." To review that judgment he has brought the case here by a writ of error.

The evidence shows that Marsh had been county clerk and recorder of Jefferson county from January 10, 1939, until the time of his resignation, April 18, 1942, immediately following the discovery of certain shortages in his accounts, which shortages he admitted at the time of his resignation, and which have since been paid in full by his bonding company. There is no need to review the evidence regarding the shortages because he was acquitted on the charge of embezzlement.

The charge on which he was convicted is based upon section 101, chapter 48, '35 C.S.A., which reads in part as follows: "If any officer or person who now is or hereafter may be intrusted by law to collect, disburse, receive or safely keep any money or moneys, revenue or revenues, belonging * * * to any county in this state * * * shall fail or refuse to pay over all moneys * * * which any such officer or person shall receive for disbursement, and has not disbursed, or shall collect, or shall receive, or shall receive for safekeeping, belonging * * * to any county of this state * * * when such officer or person shall be thereto required by law, and demand duly made by the successor or successors of such officer or person in office, or by the officer or person to whom such moneys * * * ought by law to be paid over, or his or their attorney or agent, duly authorized in writing, signed and acknowledged if such demand be practicable * * * every such officer * * * shall on conviction thereof be punished by confinement in the penitentiary * * *."

While the assignments of error cover several alleged errors, we think it necessary to consider only one, viz., that a proper demand was not made upon Marsh to turn the money over, and since such demand is made an element of the crime charged, as defined by the statute, it follows that as there was no compliance with that provision the judgment should be reversed.

It will be noted that the information states that demand was made by Olson, but this allegation was not supported by the evidence. It does show that an oral demand was made by the county attorney during an adjourned meeting of the board of county commissioners on April 20th; that Marsh, and Olson his successor, were present at this meeting at the time the oral demand was made by the county attorney; that a record of the oral demand was made in shorthand as a part of the minutes of the meeting, and that the shorthand notes were later transcribed for the purpose of being offered as an exhibit. The transcription reads: "On behalf of the Board of County Commissioners of this County, I, Emory L. O'Connell, as County Attorney, do hereby make demand upon you that immediately upon the qualification of your successor in office, that you forthwith and immediately deliver to him all books, records, papers, monies or any documents of any kind or character whatsoever, received by you in your official capacity as County Clerk, which are now or should be in your possession, custody or control as said county clerk and recorder."

Counsel for the people admit that if this demand was not sufficient in form the judgment must be reversed.

■■ It is to be noted that the demand states that it is made "on behalf of the Board of County Commissioners." It does not say on behalf of Olson or Marsh's successor. Counsel do not contend that the county commissioners are "the officer[s] or person[s] to whom such moneys, warrants, bills, notes or orders, ought by law to be paid over," or that the county attorney was the agent of Olson. Assuming that O'Connell was the duly appointed county attorney, it does not, ipso facto, make him attorney for the county clerk, except, possibly, where the county clerk acts in his statutory capacity as clerk of the board of county commissioners, but in his capacity to receive these funds he was acting in his own official capacity. Section 5, chapter 55, '35 C.S.A., makes it the duty of the district attorney, upon the request of

any county officer, to "give his opinion in writing upon all questions of law having references to the duties of such officer which may be submitted." Before the county attorney could act for Olson here "he [Olson] should show that the board of county commissioners had given authority or direction to such other officials to employ or consult an attorney." *Morris v. Board of Commissioners,* 25 Colo. App. 416, 424, 139 Pac. 582.

█ Counsel for the people contend that the provisions of the statute were complied with in that it was "not practicable under the facts" to make the kind of demand that the statute describes. "Practicable" means capable of being performed or accomplished, with available means or resources. 49 C.J. 1309, 1310. Counsel seem to infer that the word has something to do with Marsh's inability to comply with the demand. It will be observed that the words "be practicable" immediately follow the word "demand" and qualify that word only. It is reasonable to assume that a literal and exact compliance with this statute would have been very simple and wholly "practicable." Since all the persons concerned were present at the time the alleged demand was made, it would have taken no longer, nor would it have been any more difficult, for the county attorney to have followed the provisions of the statute by having Olson make the demand then and there, assuming that he had qualified as Marsh's successor.

█ The trial court by its instruction No. 10, told the jury that if they believed from the evidence that the county attorney made a demand, that such was sufficient in law, and further advised it by instruction No. 11: "It is sufficient if you believe beyond a reasonable doubt that the defendant, upon demand, failed or refused to pay over," etc., thus implying that the jury could consider a demand made in any manner as sufficient. That the jury did so construe the meaning of the language as used by the court in instruction No. 11, is apparent from the qualifying note appearing in the verdict, which we

again quote: "The jury renders this verdict in accordance with instruction number eleven (11) excepting that we believe the word feloniously in Information 1661 is contrary to the instructions of the court."

It would therefore seem apparent, or at least logical to assume, that if instructions 10 and 11 had not been given, the jury would have returned a verdict of not guilty. We think the giving of instructions 10 and 11 was clearly erroneous.

In a similar case, *Adams v. People*, 25 Colo. 532, 534, 55 Pac. 806, demand was dispensed with as "being impracticable owing to defendant's flight and absence from the country."

Counsel for the people rely largely upon three Illinois cases for affirmance in this case, viz.: *Dreyer v. People*, 176 Ill. 590, 52 N.E. 372; *Town of Cicero v. Hall*, 240 Ill. 160, 88 N.E. 476; *People v. Gerold*, 265 Ill. 448, 107 N. E. 165. In the Dreyer case judgment of conviction was reversed for insufficiency of the demand; the Town of Cicero case was a civil one. In the Gerold case, judgment of conviction was reversed partly on the ground of erroneous instructions on the question of demand, although the court did say: "The statute should be given a reasonable and practicable construction * * *. So construed, no other conclusion can be reached than that by the various conferences between Gerold and his successor, Keating, and their respective attorneys, it was clearly understood a demand was being made * * *." This was not the situation in the county commissioners' meeting, in the case at bar.

The judgment is reversed.